406 Mass. 867                                               867

Ciaramitaro v. Superintendent of Schools of Saugus; Northeast Metro. Reg. Voc. School Dist.

PAUL S. CIARAMITARO[1] vs. SUPERINTENDENT OF SCHOOLS
OF SAUGUS & another;[2] NORTHEAST METROPOLITAN
REGIONAL VOCATIONAL SCHOOL DISTRICT, third-party
defendant.

Essex. January 8, 1990. - March 8, 1990.

Present: ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Statute*, Construction. *School and School Committee*, Vocational schools,
Regional school district, Transportation of students, Tuition.

A town that is a member of a regional vocational school district, and
therefore subject to the restrictions imposed by G. L. c. 71, § 14B (*c*),
is not obligated to pay tuition and transportation costs pursuant to
G. L. c. 74, §§ 7, 8, & 8A, incurred by a town resident who, after
being placed on the waiting list of the regional vocational school district
of which the town is a member, attends a vocational school in a school
district of which the town is not a member. [869-872]

CIVIL ACTION commenced in the Superior Court Department on August 24, 1983.

A third-party complaint was dismissed by *Katherine Liacos Izzo*, J., and questions of law were reported by her to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Michael S. Greco* (*Jeanne M. Kempthorne* with him) for Superintendent of Schools of Saugus & another.

*Michael E. Festa* for the plaintiff.

NOLAN, J. Northeast Metropolitan Regional Technical High School is an independent vocational school operated by the Northeast Metropolitan Regional Vocational School District (both hereinafter Northeast). Northeast serves twelve

---

[1] A minor, by his mother and next friend, Paula Ciaramitaro.

[2] School Committee of Saugus.

868                                    406 Mass. 867

Ciaramitaro v. Superintendent of Schools of Saugus; Northeast Metro. Reg. Voc. School Dist.

communities including Saugus, where the plaintiff, Paul Ciaramitaro, resides. In December of 1981 Ciaramitaro applied to Northeast for admission in the 1982-1983 school year. Ciaramitaro was denied admission to Northeast and was placed on the waiting list. He then applied to Minuteman Regional Vocational Technical School (Minuteman) and was admitted for the 1982-1983 school year. Saugus is not a member of the Minuteman school district. The Department of Education approved Ciaramitaro's admission to Minuteman and ordered the town of Saugus to pay the tuition and transportation costs involved with Ciaramitaro's attendance at Minuteman. Saugus refused. Ciaramitaro attended neither Northeast nor Minuteman in the fall of 1982. Instead, he attended a public junior high school in Saugus.

Ciaramitaro commenced this action against Saugus, seeking damages on the grounds that Saugus (1) unlawfully excluded him from the advantages and privileges of public schools in violation of G. L. c. 76, § 16 (1988 ed.), and (2) violated his civil rights. Saugus filed a third-party complaint against Northeast. The Superior Court ruled that Saugus had violated G. L. c. 76, § 16, but ruled against Ciaramitaro on the civil rights claim.[3] The court dismissed Saugus's third-party complaint against Northeast. The Superior Court judge then reported three questions regarding the ruling on Ciaramitaro's claims.[4] Saugus appealed separately from the dismissal of its third-party complaint and the two matters

---

[3] The civil rights issue is not before us on this appeal.

[4] The three questions reported by the Superior Court were:

"1. Whether a town which is a member of a regional vocational school districts [sic], and therefore is subject to the restrictions imposed by G. L. c. 71 sec. 41 b (c) [sic] [we interpret this as a reference to G. L. c. 71, § 14B(c)], may nonetheless be obligated to pay tuition and transportation costs pursuant to G. L. c. 74, sections 7, 8, 8A of a town resident who attends a vocational school after being wait-listed by the regional vocational school district of which the town is a member.

"2. Whether a regional vocational school district which is obligated to maintain and operate a vocational school to serve the needs of the district, bears the responsibility to provide vocational education to the plaintiff, a resident of a town which is a member of the district.

406 Mass. 867                                    869

Ciaramitaro v. Superintendent of Schools of Saugus; Northeast Metro. Reg. Voc. School Dist.

were consolidated by the Appeals Court. We transferred the case to this court on our own motion.

General Laws c. 76, § 16, provides that a town or a regional school district will be liable in tort if it unlawfully excludes a student from the public schools.[5] Since Ciaramitaro actually attended the Saugus public schools in the fall of 1982, he argues that the violation of G. L. c. 76, § 16, lies in the fact that he was "excluded" from a vocational education by reason of Northeast's refusal to admit him coupled with Saugus's refusal to pay his tuition at Minuteman. Saugus contends that it is not liable under § 16 because it provided Ciaramitaro with a public school education and that, beyond that, Ciaramitaro has no right to a vocational education. Moreover, Saugus contends that if there is liability, it lies with Northeast.

As the first reported question indicates, the quintessential issue in this case is whether Saugus was obligated to pay Ciaramitaro's transportation and tuition costs at Minuteman. If the town was so obligated, as the Superior Court judge ruled, then the town's failure to pay those costs would constitute an "exclusion" of Ciaramitaro within the meaning of G. L. c. 76, § 16. In arguing that Saugus was required to pay his transportation and tuition costs, Ciaramitaro relies on G. L. c. 74, §§ 7, 8, and 8A. Section 7 provides that a student residing in a town which does not maintain a voca-

---

"3. Whether a private right of action lies under G. L. c. 76 sec. 16, consequential damages arising from a town's nonpayment of tuition and transportation expenses."

[5]General Laws c. 76, § 16, provides: "Any pupil who has attained age eighteen, or the parent, guardian or custodian of a pupil who has not attained said age of eighteen, who has been refused admission to or excluded from the public schools or from the advantages, privileges and courses of study of such public schools shall on application be furnished by the school committee with a written statement of the reasons therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover from the town or, in the case of such refusal or exclusion by a regional school district from the district, in tort and may examine any member of the school committee or any other officer of the town or regional school district upon interrogatories."

tional school may be admitted to a vocational school in another town.[6] Sections 8 and 8A provide that the student's town shall pay the tuition and transportation costs of a student who is admitted to a nonlocal vocational school pursuant to § 7.[7] Ciaramitaro argues that, because he was quali-

---

[6]General Laws c. 74, § 7 (1988 ed.), provides: "Residents of towns in the commonwealth not maintaining approved independent distributive occupations, industrial, agricultural, vocational home economics and allied health occupations training schools offering the type of education desired, or children placed in such a town by the commissioner of social services or by the trustees of the Massachusetts training schools, may, upon the approval of the commissioner under the direction of the state board, be admitted to a school in another town. In making his decision, the commissioner under the direction of the state board shall take into consideration the opportunities for free vocational training where the applicant resides, the financial status of such place, the age, preparation, aptitude and previous record of the applicant, and other relevant circumstances."

[7]General Laws c. 74, § 8, as amended through St. 1970, c. 730, provided: "A town where a person resides who is admitted to the school of another town under section seven shall pay a tuition fee to be fixed by the commissioner under the direction of the state board, and in default of payment shall be liable therefor in contract to such other town. If an approved vocational school established by a regional school district accepts a student who resides in a town, other than a member town of said district, which does not maintain such a vocational school, the town in which such student resides shall pay a tuition fee to be fixed by the regional district school committee and approved by the member of said school committee who represents the city or town in which such school is located, and also approved by the commissioner under the direction of the state board."

General Laws c. 74, § 8A (1988 ed.), provides: "A town where a person resides who is admitted to a day school in another town under section seven, shall, through its school committee, when necessary, provide for the transportation of such person, and shall, subject to appropriation be entitled to state reimbursement to the extent of fifty per cent of the amount so expended; provided, that such a town where a person is placed by the department of social services or the trustees of the Massachusetts training schools who is admitted as aforesaid to a day school in another town shall similarly provide for the transportation of such pupil to such school and shall be entitled to state reimbursement to the full extent of the amounts so expended; provided further, that no transportation shall be provided for, or reimbursement made on account of, any pupil who resides less than one and one-half miles from the school which he attends. A town shall not be required under the provisions of this section to provide for the transportation of a person who has completed the twelfth grade of school or the equivalent thereto."

406 Mass. 867                                      871

Ciaramitaro v. Superintendent of Schools of Saugus; Northeast Metro. Reg. Voc. School Dist.

fied for admission to vocational school, and because Northeast failed to admit him, Saugus does not "maintain" a vocational school within the meaning of G. L. c. 74, § 7. We disagree.

The "words of a statute must be construed in association with other statutory language and the general statutory plan." *Polaroid Corp. v. Commissioner of Revenue*, 393 Mass. 490, 497 (1984). It is incumbent on this court not to interpret the phrase "not maintaining approved . . . vocational . . . schools" in G. L. c. 74, § 7, so as to render nonsensical other statutory enactments relating to the same subject. As the Appeals Court has noted, G. L. "c. 71 and c. 74 are 'statutes relat[ing] to the same subject matter [which] should be construed together so as to constitute a harmonious whole consistent with the legislative purpose.' " *Worcester Vocational Teachers Ass'n v. Worcester*, 13 Mass. App. Ct. 1, 7 (1982), quoting *Board of Educ. v. Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). The requirement in G. L. c. 74, §§ 7, 8, and 8A, that towns "not maintaining" vocational schools pay for resident students to attend other vocational schools must be read in light of the entire statutory scheme. General Laws c. 71, § 15, and G. L. c. 74, § 5A, authorize the formation of regional vocational school districts. The Northeast Metropolitan Regional Vocational School District is specifically authorized by St. 1962, c. 703, as amended. Once a regional vocational school district is formed, "the regional district school committee shall have the powers and perform the duties conferred by law upon local trustees for vocational-technical education." G. L. c. 74, § 5A. Hence, when a town joins a regional vocational school district, the statute shifts the powers and duties relating to vocational education from the town to the regional district. In fact, G. L. c. 71, § 14B (*c*), precludes member towns from offering vocational education programs by providing that "when a vocational school district is in operation, no member town of such district . . . shall . . . offer the same kinds of education as offered by said vocational school dis-

trict." The member towns in this case entered into an agreement which mirrors the statutory requirements. Thus, when Saugus joined Northeast, all the powers and duties of Saugus relative to vocational education shifted to Northeast.

In light of this legislative scheme we think that the word "maintain" in G. L. c. 74, § 7, must be deemed to include the statutorily permissible course of action chosen by Saugus; namely, participation in the Northeast Regional Vocational School District. It follows that, because Saugus *did* maintain a vocational school within the meaning of G. L. c. 74, § 7, it was not required to pay Ciaramitaro's tuition and transportation costs at Minuteman. Accordingly, Saugus did not unlawfully exclude Ciaramitaro from the advantages and privileges of the public schools.

In view of our interpretation of the statutory scheme created by the Legislature, we do not need to answer the second and third reported questions. We note, however, that although the Legislature did not expressly provide an entitlement to vocational education in G. L. c. 74, § 7, the legislative scheme may require the provision of free vocational education to qualified students. Since we have concluded that, in the circumstances of this case, Saugus cannot be held liable for failing to provide that education, that leaves the interesting problem, raised by the second reported question, whether Northeast can be held liable under G. L. c. 76, § 16, for its refusal to admit Ciaramitaro. We do not decide this important question as it is not properly before us. However, on remand the judge may wish to allow the plaintiff to amend his complaint to state a claim against Northeast.

We answer the first reported question, "No," and therefore we need not address the other two reported questions or the issue raised by Saugus in its separate appeal. The case is remanded to the Superior Court for proceedings not inconsistent with this opinion.

*So ordered.*